IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TESSERA, INC. and TESSERA ADVANCED TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BROADCOM CORPORATION, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) C.A. No. 16-380-LPS-CJB <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) |

## STATUS REPORT CONCERNING CORE TECHNICAL DOCUMENT PRODUCTION

| | |
|---|---|
| FARNAN LLP | YOUNG CONAWAY STARGATT & TAYLOR, LLP |
| Brian E. Farnan (No. 4089) <br> Michael J. Farnan (No. 5165) <br> 919 North Market Street <br> 12th Floor <br> Wilmington, DE 19801 <br> bfarnan@farnanlaw.com <br> mfarnan@farnanlaw.com | Adam W. Poff (No. 3990) <br> Pilar G. Kraman (No. 5199) <br> 1000 North King Street <br> Wilmington, DE 19801 <br> (302) 571-6600 <br> apoff@ycst.com <br> pkraman@ycst.com |
| Attorneys for Plaintiffs <br> TESSERA, INC. AND TESSERA <br> ADVANCED TECHNOLOGIES, INC. | Attorneys for Defendant <br> BROADCOM CORPORATION |
| *Of Counsel:* <br> COVINGTON & BURLING LLP <br> Robert T. Haslam <br> Anupam Sharma <br> Thomas E. Garten <br> 333 Twin Dolphin Drive, Suite 700 <br> Redwood Shores, CA 94065-1418 <br> *rhaslam@cov.com* <br> *asharma@cov.com* <br> *tgarten@cov.com* | *Of Counsel*: <br> KILPATRICK TOWNSEND & STOCKTON LLP <br> David E. Sipiora <br> dsipiora@kilpatricktownsend.com <br> Suite 600, 1400 Wewatta Street <br> Denver, Colorado 80202 <br><br> Jonathan D. Olinger <br> jolinger@kilpatricktownsend.com <br> Suite 2800, 1100 Peachtree Street NE <br> Atlanta, Georgia 30309-4528 |
| Michael K. Plimack <br> Nitin Subhedar <br> Dale A. Rice <br> One Front Street <br> San Francisco, CA 94111-5356 <br> *mplimack@cov.com* | FOLEY & LARDNER LLP <br> Ramy E. Hanna <br> rhanna@foley.com (No. 5494) <br> Steven J. Rizzi <br> srizzi@foley.com |

*nsubhedar@cov.com*  
*drice@cov.com*

Laura E. Muschamp  
Christopher K. Eppich  
Kathryn Garcin  
1999 Avenue of the Stars  
Suite 1500  
Los Angeles, CA  90067-6045  
*lmuschamp@cov.com*  
*ceppich@cov.com*  
*kgarcin@cov.com*

90 Park Avenue  
New York, NY 10016-1314

Dated: January 17, 2017

Dear Judge Burke:

Tessera and Broadcom submit this joint letter pursuant to the Court's December 22 Order.

<u>Tessera's Statement</u>

As Tessera noted in the parties' previous report, Broadcom produced GDS files relating to 11 of the 17 products named in Tessera's Initial Identification of Accused Products ("IIAP") as infringing the '563 and '001 products. Tessera's review of the files was hindered by Broadcom's unilateral decision on December 14 to produce these files in Washington D.C. rather than in its Silicon Valley, as Broadcom had indicated to the Court (*see* D.I. 51 at 2.) and as Tessera requested on December 5. Today, January 17, 2017, is the first day the GDS files have been made available in Silicon Valley. Broadcom has represented to Tessera that this production also contains GDS files for the missing 6 products. Tessera will begin reviewing the additional files today to determine whether Broadcom's production of GDS files is complete as to the products named in the IIAP.

Since the previous status report, Tessera has been able to identify the deficiencies in Broadcom's production in greater detail. The parties discussed the deficiencies during a meet and confer on January 5, 2017. Tessera provided additional details on the missing documents by correspondence on January 12 (Exhibit 1). As Tessera has explained to Broadcom:

- Broadcom has not produced a single document for at least 13 accused products. Broadcom stated for the first time by letter dated January 17 that these products were excluded because they do not have sales in the United States in the last 6 years. To the extent Broadcom is referring only to direct sales to the United States, Broadcom must produce documents on these products if they are incorporated into products subsequently sold in the United States.
- Tessera has been unable to identify a single <u>process flow</u> or <u>recipe</u> in Broadcom's production for any of the accused products . A number of the assembly qualification reports in the production refer to such process flows. Similarly, recipes provide further detail about the materials and steps associated with production and are the type of information Broadcom likely has or has access to. On January 17, Broadcom confirmed that it was investigating whether Broadcom has—or has access to—these documents.
- Tessera has not received <u>assembly qualification reports</u> for all of the accused products. Notably, Broadcom's production did not contain a single assembly qualification report for any of the products accused of infringing the '215 patent. Broadcom informed Tessera by letter dated January 17 that these documents would be produced by January 20.
- Tessera believes that additional <u>third party qualification reports</u>, created by third parties and provided to Broadcom, likely exist. In addition, Tessera anticipates that Broadcom likely has <u>pre-qualification documents</u> (possibly from third parties) containing plans for packaging the accused products. Tessera has requested both of these categories of documents and Broadcom confirmed on January 17 that it would search for these documents.
- Broadcom has produced few <u>bills of material</u> (BOMs). Broadcom contends that the assembly instructions produced to Tessera and the BOMs are one and the same. However, there appears to be BOM-related information that is not contained in the assembly instructions. Furthermore, there are also BOMs listed in the assembly qualification reports that do not match the assembly instructions. Tessera has requested these additional BOMs.
- Broadcom has yet to produce any <u>design reviews</u>. Design reviews are comprehensive product development summaries authored by the engineering teams responsible for product design.
- Broadcom produced a single-page <u>circuit schematic</u> for each of the products accused of infringing the '046 and '699 patents. To the extent Broadcom contends that these patents are not infringed, and the basis for Broadcom's contention is not evident from the produced schematics, Tessera has requested that Broadcom produce additional schematics and supporting material.

On January 13, 2017, Broadcom produced four-pages of <u>sales information</u> for only 45 of the 81 accused products in Tessera's IIAP.  Further, Broadcom has repeatedly represented that material differences exist between marketing numbers (used in Tessera's IIAP) and i-Part numbers associated with each marketing number (sometimes multiple for each marketing number).  If Broadcom contends that material differences exist between the various I-Part numbers, sales figures are required for each accused product by I-Part number.

Finally, Broadcom has produced documents for only those marketing numbers Tessera specifically identifies in its IIAP.  However, Tessera's infringement allegations cover all products that use the same or substantially the same circuitry, interconnect structures, or packaging as the products Tessera has previously identified.  The identification of all such additional accused products depends on information uniquely within Broadcom's possession, custody, and control.  For example, for the packaging and interconnect patents, all products sharing a common packaging type and having the same relevant entries in the assembly instructions pertaining to the manufacture of Broadcom's products are accused products.  By way for example, all Broadcom's products using BGA packages with the dielectric material polybenzoxazole ("PBO") as a compliant layer are accused products for the '563 patent and all Broadcom's BGA packages having a plated RDL process to achieve a Ti/Cu/Cu RDL stack up are accused products for the '001 patent.  For the circuit patents, all products that use the same or substantially similar level shifter circuit and/or voltage reference circuit depicted in the produced schematics are accused products.  Broadcom must produce core documents for all such products.

To provide Tessera sufficient time to review Broadcom's technical documents in advance of the March 9, 2017 initial infringement contention deadline, Tessera asks this Court to order Broadcom to complete its production for all accused products (whether or not specifically identified by Tessera in its IIAP), or to identify these documents by Bates numbers, no later than January 31.

<u>Broadcom's Statement</u>

*Core Technical Production:*  On January 5, 2017, the parties held a meet and confer to discuss Broadcom's core technical production.  During that meet and confer, Tessera identified for the first time specific alleged deficiencies with Broadcom's production.  The parties' discussion included the production of sales data for the Accused Products.  Broadcom informed Tessera that, consistent with its representation to the Court, it would produce such sales data the following week, which it did on January 13.  For the first time today, Tessera requests that the sale data be provided by i-Part number.  Broadcom will supplement its production to provide sales data by i-Part number.

On January 12, 2017, Tessera sent a letter to Broadcom summarizing the meet and confer and providing additional details regarding Tessera's concerns with Broadcom's Core Technical Production.  In the January 12th letter, the January 5th meet and confer, and today's status letter, Tessera failed to explain why the additional documents that it now seeks are needed for its infringement contentions, which is the purpose of the core technical document production.

Broadcom responded to Tessera's letter on January 17.  (*See* Attachment 1.)  Broadcom disagrees that all of the categories of documents identified in Tessera's January 12 letter are required for Broadcom's core technical document production.  Pursuant to the Court's Scheduling Order (D.I. 41), that production was to consist of those technical documents "sufficient to show how the accused product(s) work(s)."  Broadcom's December 16, 2016 production provided that information and more.  Nevertheless, Broadcom informed Tessera that it is in the process of investigating many of Tessera's concerns.  To the extent Broadcom locates additional relevant, non-privileged information requested by Tessera, Broadcom will supplement its production.

Regarding the specific categories of documents identified in Tessera's portion of today's status letter, much of this information is not maintained within Broadcom's central repository of technical information.  Nevertheless, Broadcom has informed Tessera as follows:

2

- Broadcom does not have sales data regarding products that are incorporated *by third-parties* into products subsequently sold in the United States;
- Process flow, recipes, and pre-packaging information are prepared and maintained by Broadcom's foundries and OSATs.  Broadcom is continuing to investigate whether other sources within Broadcom may have this information;
- Broadcom will produce inadvertently omitted assembly qualification reports for the '215 accused products later this week;
- Broadcom has performed and will continue to perform a diligent search for BOM information separate from that in already produced documents;
- Broadcom is investigating what design review documents relating to the Accused Products may be in its possession;
- If Tessera believes that additional schematics are required to evaluate its infringement claims, Tessera should specifically identify those schematics it needs.

Finally, Tessera's suggestion that Broadcom's core technical production should include documents for "substantially the same circuity, interconnect structures, or packaging" ignores the Court's Scheduling Order, which required Tessera to identify accused products with specificity, including that "Plaintiffs' identification of accused products *shall be as specific as possible and shall identify more than just the generic product marketing numbers listed in the Complaint*. Plaintiffs shall also disclose information sufficient for Broadcom to *specifically identify* the accused chips and instrumentalities." (D.I. 41 at 3-4 (emphasis added).)  Broadcom produced core technical documents for these specifically identified products, in accordance with the terms of the Scheduling Order.  Tessera's attempt to now expand the core technical production to general (and even incomprehensible) descriptions of products is improper.

Further, Tessera's request that Broadcom complete its production of *ALL* technical documents by January 31 is unreasonable.  If Tessera requires specific documents for its infringement contentions, Tessera must promptly explain why it needs those documents.  Broadcom will make every effort to produce relevant, non-privileged documents sufficiently in advance of the March 9, 2017 deadline for Tessera's infringement contentions.

*GDS Files:*  During the January 5 meet and confer, the parties discussed the status of Broadcom's efforts to setup a computer for the review of GDS files in Silicon Valley as requested by Tessera.  Tessera stated for the first time that it hoped to review GDS files during the week of January 9th in Silicon Valley.  At that time, Broadcom informed Tessera that it was still awaiting receipt of the special order machine and that Broadcom would require several additional days to configure the machine for review in accordance with the terms of the Protective Order.

Thereafter, Broadcom provided Tessera with several updates regarding its progress in configuring the GDS review machine, including an update on January 10 informing Tessera that the computer would be available for review during the week of January 17.  During this entire time period, GDS files were available for review in Washington, D.C., but Tessera made no attempt to review any GDS files at that location.  Tessera cannot argue that its review of GDS files has been "hindered" as the majority of GDS files have been available in Washington, D.C. since December 19.

On January 13, Broadcom notified Tessera that the GDS files could be reviewed in Kilpatrick Townsend's Menlo Park office as of January 17.  Broadcom also notified Tessera that the handful of GDS files that were missing from Tessera's review on December 20, 2016 were now available for review on the computer in Kilpatrick Townsend's Menlo Park office.  Tessera is scheduled to review GDS files in Menlo Park on January 17 and January 18.

3