# EXHIBIT 1

# CONFIDENTIAL SOURCE CODE-
## Outside Counsel's Eyes Only

# EXHIBIT A-1

United States District Court for the District of Delaware, Case No. 1:16-cv-00380-LPS-CJB

# EXHIBIT 2

# EXHIBIT 3

# COVINGTON

BEIJING  BRUSSELS  LONDON  LOS ANGELES
NEW YORK  SAN FRANCISCO  SEOUL
SHANGHAI  SILICON VALLEY  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 6000

March 31, 2017

**By Email**

Jonathan D. Olinger, Esq.
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309-4528

Re:    *Case No. 16-380-CJB – Broadcom's Supplemental Responses to Tessera's First Set of Interrogatories (Nos. 1–7)*

Jonathan,

We write in response to your letter of February 28 concerning Broadcom's interrogatory responses and Broadcom's first supplemental objections and responses, dated March 13, to Plaintiffs' first interrogatories (Nos. 1–7). Broadcom's interrogatory responses remain deficient in many respects, as described below, and Plaintiffs request that Broadcom promptly supplement its responses to correct these deficiencies.

Interrogatory No. 1

Broadcom's continuing reliance on Rule 33(d) to identify vast quantities of documents in response to this interrogatory is improper. In addition to its initial response to this interrogatory, which referred to 14,611 pages of material (BCM-D380 0031689 to BCM-D380 0146300) and is incorporated by reference in Broadcom's supplemental response, Broadcom has now identified an additional 270 documents spanning large parts of a separate range of 7,061 pages (BCM-D380 0020079 to BCM-D380 0027140). To the extent that Broadcom is enlarging the universe of documents from which it contends Plaintiffs must derive the answer to this interrogatory, it has exacerbated its abuse of Rule 33(d).

Contrary to Broadcom's contention, this interrogatory is not overbroad. Rather, it is directed to critical information regarding the identity of all Accused Products. Broadcom cannot reasonably claim that information regarding how Broadcom itself identifies the Accused Products is as readily ascertainable to Plaintiffs as it is to Broadcom. Broadcom has now had an opportunity to review Plaintiffs' infringement contentions, which Broadcom acknowledged "will provide the information needed to understand what Tessera accuses of infringement." (Suppl. O&Rs, p. 7.) Thus, please confirm that Broadcom will supplement its responses by April 14,

Jonathan D. Olinger, Esq.
March 31, 2017
Page 2

2017 to identify all Accused Products and identifying information as requested in this interrogatory.[1]

Interrogatory Nos. 2 and 3

The information requested in these interrogatories, regarding how the Accused Products are engineered, designed, fabricated, manufactured, packaged, and assembled, as well as the layers of the Accused Products, is fundamental to infringement issues in this case. As noted in our letter of February 22, Broadcom's identification of 29,982 pages of documents (BCM-D380 0001580–BCM-D380 0024813; BCM-D380 0024817–BCM-D380 00315660) and many GBs of GDS files in response to these interrogatories is unacceptable.

Broadcom is more knowledgeable about its own documents and the location of the requested information than Plaintiffs, and thus the burdens of reviewing such a vast quantity of documents is not the same as between the parties. Plaintiffs are thus troubled by Broadcom's refusal to supplement its response to these interrogatories. In your letter, you indicate that "each individual marketing code may be associated with many different semiconductor or packaging designs, and each design may in turn be made according to different assembly instructions." You further state that "not all products associated with the identified marketing codes relate to the patents-in-suit." These representations simply underscore the importance of Broadcom's providing the requested information in as specific a format as possible.

Nevertheless, Plaintiffs have in fact conducted a diligent review of Broadcom's document production to date, including the GDS files and documents identified in response to these interrogatories. Plaintiffs have thus already expended a great amount of time "examining, auditing, compiling, abstracting, [and] summarizing" Broadcom's document productions. As far as Plaintiffs have been able to determine, however, Broadcom's production fails to disclose much of the basic infringement-related information responsive to this interrogatory.

For example, Plaintiffs are missing information about the engineering, design, fabrication, manufacture, packaging, and assembly of the Accused Products (Interrogatory No. 2), as follows:

- 

---

[1] Broadcom must, for instance, identify all of its ▮▮▮▮ products in order to identify all Accused Interconnect Products, based on Plaintiffs' review of the information provided to date by Broadcom.

Jonathan D. Olinger, Esq.
March 31, 2017
Page 3



In addition, Broadcom's production fails to disclose certain information regarding the layers of the Accused Products (Interrogatory No. 3), as follows:



Jonathan D. Olinger, Esq.
March 31, 2017
Page 4



To the extent that Broadcom wishes to rely upon Rule 33(d) rather than provide a narrative response to these interrogatories, it must produce and specifically identify additional documents providing the foregoing information for all of the Accused Products.

Please confirm that Broadcom will, by April 14, 2017, supplement its responses to provide the missing information described above, including by producing and *specifically* identify any additional documents necessary to show such information.

Interrogatory No. 4

Broadcom's supplemental response to this interrogatory remains deficient. Broadcom has provided the names of only two of its own employees, and has not provided the additional requested information regarding the identified individuals, i.e., titles, locations, and responsibilities. Broadcom also failed to provide the requested information regarding frequency of travel of the identified Broadcom employees to the respective foundries and OSATs, and a description of electronic access provided to Broadcom by the foundries and OSATs. Please confirm that Broadcom will supplement its response to provide all of the requested information, including identification of any additional Broadcom employees who have responsive information,  by April 14, 2017.

Jonathan D. Olinger, Esq.
March 31, 2017
Page 5

Interrogatory No. 5

      Broadcom has still not provided much of the information requested by this interrogatory, specifically:

- Product numbers for the additional products designed by the named individuals;
- Any library names or other designations used for the ████████████ and ████████████ designs; or
- Product numbers for additional products that use the same or similar ████████████ or ████████████ design.

      Please confirm that Broadcom will supplement its answer by April 14, 2017 to provide such missing information.[2]

Interrogatory No. 6

      We understand Broadcom will provide its invalidity contentions, which relate to its Third Affirmative Defense (Invalidity), by April 14.

      Regarding Broadcom's additional affirmative defenses, Plaintiffs disagree with your contention that they "speak for themselves." Broadcom was required to have a good faith, factual basis for asserting these defenses, which is nowhere disclosed in Broadcom's Answer to the Amended Complaint. In addition, regarding at least Broadcom's Third Affirmative Defense (Invalidity), Fourth Affirmative Defense (Prosecution Estoppel), Ninth Affirmative Defense (Exhaustion), Tenth Affirmative Defense (Laches), Eleventh Affirmative Defense (Equitable Estoppel), Twelfth Affirmative Defense (Waiver), and Fourteenth Affirmative Defense (Government Sales), it is Broadcom—not Plaintiffs—that would bear the burden of proof regarding the factual basis of the defenses. Plaintiffs further note that Broadcom has now received Plaintiffs' initial infringement contentions, negating one of Broadcom's main objections to providing further responsive information.

      Thus, Broadcom has no reasonable grounds for refusing to provide a substantive response setting forth the basis for all of its affirmative defenses. Please confirm Broadcom will promptly supplement its response to provide such information.

---

[2] As Broadcom is aware, Plaintiffs' Requests for Production of Documents, including at least RFP Nos. 23, 24, 29, 30, 31, and 35, request documents disclosing such information, which Broadcom has also so far failed to produce.

Jonathan D. Olinger, Esq.
March 31, 2017
Page 6

Interrogatory No. 7

Broadcom received Plaintiffs' infringement contentions on March 9. Broadcom thus has no basis for not promptly providing its own non-infringement contentions in response to this interrogatory, notwithstanding the fact that claim terms have not yet been identified or construed. Please confirm that Broadcom will supplement its response to provide its non-infringement contentions by April 14.

Sincerely,

Christopher Zirpoli

# EXHIBIT 4



**FOLEY**
FOLEY & LARDNER LLP

ATTORNEYS AT LAW

3000 K STREET NW SUITE 600
WASHINGTON, D.C. 20007
202.672.5300 TEL
202.672.5399 FAX
foley.com

WRITER'S DIRECT LINE
202.945.6143
dlange@foley.com EMAIL

CLIENT/MATTER NUMBER
094490-0115

April 20, 2017

**VIA EMAIL**

Christopher T. Zirpoli, Esq.
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956

Re:    *Tessera v. Broadcom Case No. 16-380-LPS-CJB*
      *Broadcom's Responses to Tessera's First Set of Interrogatories*

Dear Christopher:

We write in response to your letter of March 31, 2017 regarding alleged deficiencies with Broadcom's First Supplemental Responses to Tessera's First Set of Interrogatories. We maintain that Broadcom's reliance on Rule 33(d) is proper, particularly considering the breadth of Tessera's interrogatories and the number of products (more than 100) and patents (7) at issue. As such, we disagree that Broadcom's Responses remain deficient. Broadcom will supplement its responses in due course and as described below.

<u>Interrogatory No. 1</u>

This Interrogatory asks for specific "identifying" information concerning the accused products. Broadcom maintains that this information may be found in the assembly instructions and marketing materials for the accused products cited in Broadcom's First Supplemental and initial Responses, respectively.

As to footnote 1 in your letter, Broadcom disagrees that it is required to "identify all of its ▮▮▮▮▮▮ products" because these products are now all accused "based on Plaintiffs' review of the information provided to date by Broadcom." Neither your letter nor Tessera's infringement contentions provide details to substantiate this claim and that would warrant the substantial expense and time for Broadcom to identify discovery regarding all of its ▮▮▮▮▮ products or to distinguish a subset. To the extent Tessera is relying on its infringement contentions to support this claim, those contentions are insufficient. As an example, for Chart A-1 for the '563 patent, Tessera does not rely on technical data from just one product to support its contentions – but instead groups data from an array of products together. In that same chart, Tessera also cites to test results without identifying basic information about the testing, such as the type of test and protocol used. (Broadcom will provide separate correspondence on this issue in due course that details Broadcom's concerns with Tessera's infringement contentions.) It appears that Tessera is simply using this Interrogatory to improperly shift its burden to identify the accused products to Broadcom.

BOSTON        JACKSONVILLE    MILWAUKEE    SAN DIEGO        SILICON VALLEY
BRUSSELS      LOS ANGELES     NEW YORK     SAN DIEGO/DEL MAR  TALLAHASSEE
CHICAGO       MADISON         ORLANDO      SAN FRANCISCO    TAMPA
DETROIT       MIAMI           SACRAMENTO   SHANGHAI         TOKYO
                                                            WASHINGTON, D.C.



**FOLEY & LARDNER LLP**

Christopher T. Zirpoli
April 20, 2017
Page 2

<u>Interrogatories Nos. 2 and 3</u>

These Interrogatories – which ask for detailed engineering, design, fabrication,
manufacturing, packaging, and assembling information for each Accused Packaging Product and
Accused Interconnect Product, and the semiconductor devices in these products – are
exceedingly broad. Given the amount of information requested and number of products at issue,
Broadcom again maintains its reliance on Rule 33(d) is proper.

Based on the specific issues that you raised in your letter, it appears that ███████████
████████████████████████████████████████████████ Broadcom continues to search for information
responsive to these interrogatories and, as we have said before, to the extent such information is
located in Broadcom's possession, custody, or control, it will be produced.

In response to the specific issues that you raised:



**≡FOLEY**

FOLEY & LARDNER LLP

Christopher T. Zirpoli
April 20, 2017
Page 3

███████████████████████████████████████████████████████████

## Interrogatory No. 4

Broadcom maintains that its responses to this Interrogatory are proper and disagrees that the information sought is relevant, particularly "the frequency that each Broadcom employee travels to the foundry and/or OSAT," and "a description of any electronic access provided to Broadcom by its foundry(ies) and/or OSATs."

## Interrogatory No. 5

The issue of product numbers for the additional products designed by the named individuals was also raised in your April 13, 2017 letter regarding Broadcom's Production of Circuitry documents. The parties have scheduled a meet and confer on that letter for April 24 at 4:30 p.m. Broadcom will be prepared to discuss this issue during that meet and confer.

Broadcom is continuing its investigation with respect to "any library names or other designations used for the ███████████ and ████████ designs." Broadcom will supplement its interrogatory response, to the extent any responsive information is located within Broadcom's possession, custody or control following a reasonably diligent search, in due course and in accordance with the case schedule as Broadcom's investigation continues.

Finally, as Broadcom's Objections to this Interrogatory plainly state, Broadcom objects to this interrogatory as vague and ambiguous for requiring information about unidentified marketing codes that are "substantially the same" as the identified marketing codes, without providing any guidance whatsoever about what Tessera means by "substantially the same." Tessera's request for product numbers for additional products that use the same or "similar" ███████████ or ████████ designs is vague and ambiguous. Tessera must provide an articulation of what it means by "similar" ███████████ or ████████ design before Broadcom can conduct a reasonable investigation in response to this Interrogatory.

## Interrogatory No. 6

As stated in Mr. Olinger's February 28, 2017 letter, Broadcom's factual investigation is ongoing, and Broadcom is still developing its defenses and related contentions. Further, the Interrogatory is premature because disputed claim terms have not been identified nor construed, and the Interrogatory seeks expert opinions prior to the opening of expert discovery. As stated in its Responses to this set of interrogatories, Broadcom will supplement its response as discovery continues and in accordance with the timing provided by the Local Rules and the Court's Scheduling Order.

4822-2509-9847.1



**FOLEY & LARDNER LLP**

Christopher T. Zirpoli
April 20, 2017
Page 4


Interrogatory No. 7

      Broadcom continues to diligently review Tessera's infringement contentions and, as stated above, will provide separate correspondence regarding those contentions in due course. As for Broadcom's response to this Interrogatory, Broadcom will timely supplement to provide its non-infringement contentions in accordance with the case schedule and once Tessera has sufficiently articulated its infringement contentions.

                  Regards,

                  Debra A. Lange

cc:    Tessera-Broadcom@cov.com
        Broadcom – Foley - Del380@foley.com
        Broadcom-Tessera 380@kilpatricktownsend.com
        Brian Farnan (email)
        Adam Poff (email)

# EXHIBIT 5

*OUTSIDE COUNSEL'S EYES ONLY*

# COVINGTON

BEIJING   BRUSSELS   LONDON   LOS ANGELES
NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

April 28, 2017

**By Email**

Debra A. Lange, Esq.
Foley & Lardner LLP
3000 K Street NW, Suite 600
Washington, DC 20007

> Re:   *Case No. 16-380-CJB – Broadcom's Supplemental Responses to Tessera's First
> Set of Interrogatories (Nos. 1–7)*

Dear Debra,

We write in response to your letter of April 20, 2017 concerning Broadcom's interrogatory responses. Broadcom's responses remain deficient, and Tessera requests a meet and confer to discuss the issues addressed below and in our previous letter of March 31.

Interrogatory No. 1

We maintain that Broadcom's reliance on Rule 33(d) to cite vast quantities of documents in response to this interrogatory is improper, as the information needed to identify Accused Products that are the same or substantially similar to the products charted in Tessera's initial contentions is more readily available to Broadcom than to Plaintiffs. As the responding party, Broadcom must "specify[] the records that must be reviewed, in sufficient detail to enable [Tessera] to locate and identify them as readily as [Broadcom] could." Fed. R. Civ. P. 33(d)(1).

As we noted in our letter of March 31, Broadcom has now had an opportunity to review Plaintiffs' infringement contentions. Broadcom originally acknowledged that these contentions "will provide the information needed to understand what Tessera accuses of infringement." (Suppl. O&Rs, p. 7.) Now, however, Broadcom appears to refuse to meaningfully supplement its response to this interrogatory despite having Plaintiffs' contentions in hand.

As to Broadcom's ███████████████ (████████ products, Tessera's review of Broadcom's document productions to date, as well as public information, indicate that all such products infringe U.S. Patent Nos. 6,954,001 (the '001 patent) and 6,284,563 (the '563 patent) in the same manner. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

*OUTSIDE COUNSEL'S EYES ONLY*

Debra A. Lange, Esq.
April 28, 2017
Page 2

██████████████████████████████████████████████████.

Contrary to your assertion in your April 20 letter, Tessera' infringement contentions have made clear to Broadcom that the scope of accused products for the '563 and ''001 patents (hereinafter "Accused Interconnect Products") includes the above features. *See* Tessera Initial Infringement Contentions at 6–34 (identifying infringing features of Representative Group A-1 as to the '563 patent), 35–69 (identifying infringing features of Representative Group B-1 as to the '001 patent). Accordingly, the Accused Interconnect Products include all of Broadcom's ████████ products.

<u>Interrogatory Nos. 2 and 3</u>

Tessera maintains that Broadcom's reliance on Rule 33(d) to respond to these interrogatories is also inappropriate. Broadcom has failed, for example, to identify specific documents that describe the material composition of the dielectric layer or the step-by-step manufacturing process for any accused product, let alone produced documents sufficient to show such information for all accused products as required by Rule 33(d). Under these circumstances, your generic citation to 29,982 pages of documents and subsequent statement that "the documents speak for themselves" is entirely unhelpful.

Your letter states that it appears "much of the information . . . in response to these interrogatories is in the possession, custody, or control of Broadcom's OSATs and/or foundries." As you know, Tessera is also diligently pursuing discovery from such third parties, but this does not mitigate Broadcom's own discovery obligations. To the extent that responsive information is in Broadcom's possession, custody, or control, Tessera is entitled to obtain such information from Broadcom in the first instance.

In response to specific issues raised in your letter:



***OUTSIDE COUNSEL'S EYES ONLY***

Debra A. Lange, Esq.
April 28, 2017
Page 3



Interrogatory No. 4

Broadcom's supplemental response identifies only two Broadcom employees who interact with Broadcom's OSATs and foundries. It is unlikely that Broadcom is not aware of additional employees who have interacted with these OSATs and foundries. In addition, Broadcom's response fails to provide all of the information requested regarding the persons identified in the response, i.e., the location and job responsibilities of the Broadcom employees; the titles of the OSAT and foundry employees; a correlation of each Broadcom employee with the OSAT and foundry employees with whom (s)he has communicated; the frequency of the Broadcom's employees' travel to the OSATs; and a description of any electronic access provided to Broadcom by the OSATs.

All of this information is relevant for Tessera to determine, for instance, the scope of discoverable knowledge held by each Broadcom employee who interacts with the OSATs and foundries, and to what extent certain information relevant to infringement is within the possession, custody, or control of Broadcom and/or the respective OSATs or foundries. Any burden to Broadcom of providing this information is minimal compared with its clear relevance.

*OUTSIDE COUNSEL'S EYES ONLY*

Debra A. Lange, Esq.
April 28, 2017
Page 4

Interrogatory No. 5

In addition to the issues raised in our April 13 letter, the parties' meet-and-confer on April 24, 2017 addressed certain information requested by this interrogatory, namely (i) product numbers for the additional products designed by the named individuals and (ii) product numbers for additional products that use the same or similar ████████ or ████████ design. As we indicated on that meet-and-confer, Tessera believes that additional products designed by the same individuals are likely to have the same or substantially similar circuit designs given the efficiency and commonplace nature of circuit design reuse in the industry, and are therefore properly the subject of discovery. *See, e.g.*, *Honeywell v. Acer America Corp.*, 655 F. Supp. 2d 650, 657 (E.D. Tex. 2009) (allowing discovery of products that "likely operate in a manner reasonably similar to the infringement theory described in" plaintiff's infringement contention). Tessera's infringement contentions provide sufficient information for Broadcom to identify products that are "substantially the same" in their ████████ and ████████ designs. Namely, such products share the aspects of the BCM 4330 and BCM 4334 products that are described as infringing the '046 and '699 Patents in Tessera's initial infringement contentions.

Regarding library names or other designations used for the ████████ and ████████ designs, it is not acceptable for Broadcom merely to provide such information "in due course and in accordance with the case schedule as Broadcom's investigation continues." This highly relevant information must be promptly provided in response to Tessera's outstanding discovery requests.

Interrogatory No. 6

It is unacceptable for Broadcom simply to "supplement its response as discovery continues and in accordance with the timing provided by the Local Rules and the Court's Scheduling Order." Broadcom may not refuse to provide an answer stating the factual bases of its affirmative defenses indefinitely when such information is well overdue in response to valid, pending discovery requests. Tessera's interrogatory is directed to factual information within Broadcom's possession and does not prematurely seek expert opinion or claim construction positions. *See Oasis Research, LLC v. Adrive, LLC*, No. 4:10-cv-0435, 2011 WL 7272473, at *2 (granting motion to compel defendant to answer non-infringement contention interrogatory over improper objection that interrogatory prematurely sought claim construction positions) (E.D. Tex. Sept. 13, 2011).

In any event, Broadcom was required to have a good-faith basis for its affirmative defenses and would bear the burden of proof at least on its Third Affirmative Defense (Invalidity), Fourth Affirmative Defense (Prosecution Estoppel), Ninth Affirmative Defense (Exhaustion), Tenth Affirmative Defense (Laches), Eleventh Affirmative Defense (Equitable Estoppel), Twelfth Affirmative Defense (Waiver), and Fourteenth Affirmative Defense

*OUTSIDE COUNSEL'S EYES ONLY*

Debra A. Lange, Esq.
April 28, 2017
Page 5

(Government Sales). Assuming Broadcom has a good faith basis for asserting these defenses, Broadcom must provide the facts that support them.

Interrogatory No. 7

  Broadcom cannot continue to withhold its non-infringement contentions after it has had since March 9 to review Tessera's initial infringement contentions. Tessera has already "sufficiently articulated its infringement contentions" for Broadcom to provide responsive non-infringement contentions. It is thus unacceptable for Broadcom to indicate merely that it will "timely supplement to provide its non-infringement contentions in accordance with the case schedule." Broadcom's objection is particularly inappropriate because the case schedule does not provide a date for non-infringement contentions, and this information is thus properly requested as part of a contention interrogatory. Tessera is entitled to receive Broadcom's non-infringement contentions promptly so that it may take additional discovery regarding the bases of those contentions during the fact discovery period. Broadcom has no basis to withhold its non-infringement contentions indefinitely rather than provide timely responses to Tessera's outstanding discovery requests. *See, e.g.*, *Fellowes, Inc. v. Aurora Corp. of America*, No. 07-cv-7237, 2009 WL 1097063 at *2 (holding that interrogatory requesting non-infringement contentions was not premature, as "Defendants have Plaintiff's claim chart and can respond accordingly") (N.D. Ill. Apr. 1, 2009).

  Please let us know your availability to meet and confer regarding all of the foregoing next Tuesday or Wednesday, May 2–3.

Sincerely,

Christopher Zirpoli

# EXHIBIT 6



**ATTORNEYS AT LAW**

3000 K STREET NW SUITE 600
WASHINGTON, D.C. 20007
202.672.5300 TEL
202.672.5399 FAX
foley.com

WRITER'S DIRECT LINE
202.945.6143
dlange@foley.com EMAIL

CLIENT/MATTER NUMBER
094490-0115

May 11, 2017

**Via Email**

Christopher T. Zirpoli, Esq.
Rajesh Paul, Esq.
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956

Re:    *Tessera v. Broadcom Case No. 16-380-LPS-CJB*
*Broadcom's Responses to Tessera's First Set of Interrogatories*

Dear Christopher:

We write in response to your letter of April 28, 2017, and Rajesh's email of May 9, 2017, regarding alleged deficiencies with Broadcom's First Supplemental Responses to Tessera's First Set of Interrogatories. We disagree that the parties' correspondence on this issue has not resulted in progress and further contend that this issue could have been resolved more efficiently had Tessera served properly-tailored discovery requests and sufficient infringement contentions. We respond below to your letter and confirm that Broadcom is available to meet and confer next Monday, May 15, 2017, at 3 pm ET.

Interrogatory No. 1

Broadcom disagrees that its Rule 33(d) response to this Interrogatory was not appropriate. To the extent Tessera is pursuing the issue of the identification of "substantially similar" products, it is Tessera's not Broadcom's burden to identify the Accused Products. Your April 28th letter contends that Broadcom should be able to identify these products – and that Tessera has shown that all ▇▇▇▇▇ products infringe the '001 and '563 patents – based on Tessera's infringement contentions. While Broadcom continues to review the contentions, it has already identified several deficiencies that must be remedied before Broadcom can assess its ability to provide further response. *See* Lange Letter to Garcin (dated May 9, 2017). For example, while the contentions may point to certain features in the Accused Products, they do not explain Tessera's bases for contending that those features satisfy given claim limitations. In Exhibit A-1, Tessera points to ▇▇▇▇▇ in Broadcom's ▇▇▇▇▇ product as satisfying the "array of contacts" limitation of claim 2 of the '563 patent, but Tessera does not explain how those contacts are an "array." In that same Exhibit, Tessera states, but does not explain why, the '▇▇▇▇ satisfies the "bond ribbon" limitation. In Exhibit B-1, Tessera does not identify support for the diffusion layer limitations. Absent such explanations, and setting aside Broadcom's

BOSTON
BRUSSELS
CHICAGO
DETROIT

JACKSONVILLE
LOS ANGELES
MADISON
MIAMI

MILWAUKEE
NEW YORK
ORLANDO
SACRAMENTO

SAN DIEGO
SAN DIEGO/DEL MAR
SAN FRANCISCO
SHANGHAI

SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO
WASHINGTON, D.C.

4845-5028-1288.1



**FOLEY & LARDNER LLP**

Christopher T. Zirpoli
May 11, 2017
Page 2

disagreement with Tessera's positions, Broadcom is not able to understand what Tessera would contend is a "substantially similar" product since Broadcom does not understand Tessera's reasoning for selecting the particular features as satisfying the claim limitations. We request that Tessera immediately remedy the deficiencies in its contentions identified in our May 9th letter.

<u>Interrogatories Nos. 2 and 3</u>

Your April 28th letter again ignores the actual language of these Interrogatories, which is exceedingly broad and appears to cover all Accused Packaging and/or Interconnect Products. Tessera cannot seriously expect to serve two exceedingly broad Interrogatories on design, engineering, and manufacturing of the Accused Products (including the semiconductor devices in these products) and expect Broadcom to redraft its technical documents into a narrative response for each product. As such, Broadcom continues to maintain that its reliance on Rule 33(d) to respond to these Interrogatories is proper.

In terms of alleged deficiencies in Broadcom's production and/or responses, as we have stated on multiple occasions, Broadcom has limited information concerning the operations of its contract manufacturers, including its OSATs. To the extent such information is in Broadcom's possession, custody, or control, Broadcom will produce it (and indeed, has produced and cited it in response to these Interrogatories). Document production is not set for substantial completion until August. Therefore, any insinuation that Broadcom has been anything less than diligent is unacceptable. As for Broadcom's GDS files, our April 20th letter already explained that the GDS files located on the inspection PC can be correlated to Accused Products based on the die version (and sometimes the foundry) found in the folder/file name of the GDS file and the Broadcom I-Part number.

<u>Interrogatory No. 4</u>

Broadcom disagrees that the vast majority of the information sought by this Interrogatory is relevant (*e.g.*, location, travel frequency, etc.) and requests that Tessera provide authority showing that to be the case.

<u>Interrogatory No. 5</u>

With respect to Tessera's interrogatory request for "the product numbers (including at least core product numbers, marketing part numbers and i-part numbers) of any additional products designed by the designers identified in (a) through (d)" of Interrogatory No. 5, Tessera has not demonstrated the relevance of this information. Namely, Tessera's request is not limited to work performed by the "designers" on the specifically accused ███████ or ███████ ███████ accused of infringing the '699 and '046 patents. Thus, Tessera has not demonstrated

**☰FOLEY**

FOLEY & LARDNER LLP

Christopher T. Zirpoli
May 11, 2017
Page 3

that the requested information relates to products and instrumentalities that "likely operate in a manner reasonably similar to the infringement theory described in" plaintiff's infringement contentions. Nevertheless, as we informed you during the April 25, 2017 phone call, following a reasonably diligent search, Broadcom does not have within its possession, custody or control information regarding other ████████████ or ████████████ designed by these individuals. Broadcom will supplement its response to Interrogatory No. 5 consistent with the above.

With respect to Interrogatory No. 5's request for "the library names or other designations assigned for the ████████████ and/or ████████████ design in the Broadcom Accused Circuit Products in a Process Development Kit ("PDK") for a given process technology or node," although ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Broadcom will supplement its response to Interrogatory No. 5 consistent with the above information.

Finally, with respect to Interrogatory No. 5's request for "the product names (including at least core product numbers, marketing part numbers and i-part numbers) of any additional products that use the same ████████████ and/or ████████████ design in the Broadcom Accused Circuit Products or that are based on the same ████████████ and/or ████████████ design," Broadcom continues its reasonably diligent search for any additional products that use the same ████████████ and/or ████████████ design. Contrary to Tessera's belief, Broadcom is not withholding information. Broadcom will provide responsive information within its possession, custody or control following this reasonably diligent search, in due course and in accordance with the case schedule as Broadcom's investigation continues.

However, as previously stated, Tessera's request for product numbers for additional products that use "similar" ████████████ or ████████████ designs is vague and ambiguous. Tessera must specifically articulate what it means by "similar" ████████████ or ████████████ design before Broadcom can conduct a reasonable investigation in response to this Interrogatory.

Further, the parties have had on-going conversations regarding the relevance of documents and information relating to *all* of Broadcom's ████████ products. As we explained during a previous meet and confer call and in our May 9, 2017 letter, Tessera fails to provide *ANY* explanation in its Infringement Contentions or Exhibits C-1, C-2, and D-1 thereto for the basis of its belief that *all* ████████ wireless products infringe the Circuit Patents, beyond Tessera's bare assumption that power management circuits are re-used in Broadcom's products. We have requested that Tessera supplement the Contentions to set forth Tessera's complete explanation as to why it believes *all* Broadcom ████████ wireless products meet all asserted claim limitations of the Circuit Patents. Tessera has not articulated with specificity "how the unaccused ████████



**FOLEY & LARDNER LLP**

Christopher T. Zirpoli
May 11, 2017
Page 4

products are relevant to its existing claims of infringement (and how they are thus 'reasonably similar' to the accused products at issue in those claims) . . . ." *Invensas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 282 (2012). Tessera has not tied the asserted patents to the ▮▮▮ standard or articulated a factual basis for its belief that Broadcom reuses circuits in *all* of its ▮▮▮ products. What Tessera has done to date instead is akin to saying "you manufacture 15 different kinds of cell phones. We tore down three. Tell us about your other 12." *Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, Nos. 04–1337–KAJ, 04–1338–KAJ, 04–1536–KAJ, 2005 WL 3988905 at *1 n. 2 (D. Del. Oct. 7, 2005). Such an approach has been explicitly rejected by this court. *Id.* Without a specific articulation of the basis for Tessera's belief that other Broadcom ▮▮▮ products infringe the patents-in-suit, beyond Tessera's bare assumptions, Broadcom is not obligated to and will not endeavor to collect information regarding *all* of Broadcom's ▮▮▮ products.

Interrogatory Nos. 6 and 7

Contrary to the statement in your April 28th letter, Broadcom is not unduly refusing to provide the factual bases for its affirmative defenses and/or non-infringement contentions and is responding in due course. As examples, Broadcom served its initial invalidity contentions last week and will respond to Tessera's infringement contentions, although that response will be significantly impeded if Tessera does not remedy the deficiencies identified in our May 9th letter. As for Broadcom's remaining affirmative defenses, Tessera's demand is premature with 7+ months left in fact discovery, claim construction just starting, and several pertinent deficiencies in Tessera's document production. In short, the factual record concerning Broadcom's affirmative defenses has not yet been developed and the early answers Tessera seeks are not appropriate. *See, e.g.*, *Novanta Corp. v. Iradion Laser, Inc.*, Case No. 15-1033-SLR-SRF, 2016 WL 4987110, at *7-8 (D. Del. Sep. 16, 2016). On that issue, we note that Tessera has yet to respond to our March 31, 2017 letter detailing several deficiencies in Tessera's production. *See* Olinger Letter to Zirpoli. We plan to add these deficiencies to the agenda for Monday's meet and confer.

Regards,

*Deb A. Lange*

Debra A. Lange

cc:   Tessera-Broadcom@cov.com
      Broadcom – Foley - Del380@foley.com
      Broadcom-Tessera 380@kilpatricktownsend.com
      Brian Farnan (email)

**■FOLEY**

FOLEY & LARDNER LLP

Christopher T. Zirpoli
May 11, 2017
Page 5

Adam Poff (email)