```
 1                IN THE UNITED STATES DISTRICT COURT

 2               IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4
       TESSERA, INC. and TESSERA      :   CIVIL ACTION
 5     ADVANCED TECHNOLOGIES,         :
       INC.,                          :
 6                                    :
                      Plaintiffs,     :
 7                                    :
           vs.                        :
 8                                    :
       BROADCOM CORPORATION,          :
 9                                    :
                      Defendant.      :   NO. 16-380-LPS-CJB
10

11                            - - -

12                              Wilmington, Delaware
                                Wednesday, September 6, 2017
13                              1:32 o'clock, p.m.
                                ***Telephone conference
14                            - - -

15
       BEFORE:  HONORABLE CHRISTOPHER J. BURKE, U.S. MAGISTRATE
16     JUDGE

17                            - - -

18     APPEARANCES:

19              FARNAN LLP
                BY:  JOSEPH J. FARNAN, III, ESQ.
20

21                    -and-

22

23

24                              Valerie J. Gunning
                                Official Court Reporter
25
```

```
 1    APPEARANCES (Continued):

 2
                    COVINGTON & BURLING LLP
 3                  BY:  THOMAS E. GARTEN, ESQ.
                         (Redwood Shores, California)
 4

 5                         -and-

 6
                    COVINGTON & BURLING LLP.
 7                  BY:  MICHAEL K. PLIMACK, ESQ. and
                         DALE A. RICE, ESQ.
 8                       (San Francisco, California)

 9
                         Counsel for Plaintiffs
10

11

12                  YOUNG CONAWAY STARGATT & TAYLOR LLP
                    BY:  ADAM W. POFF, ESQ.
13

14                         -and-

15
                    KILPATRICK TOWNSEND & STOCKTON LLP
16                  BY:  MATTHEW C. HOLOHAN, ESQ. and
                         (Denver, Colorado).
17

18                         -and-

19
                    KILPATRICK TOWNSEND & STOCKTON LLP
20                  BY: NORRIS P. BOOTHE, ESQ.
                        (Menlo Park, California)
21

22                         -and-

23

24

25
```

1

  **APPEARANCES (Continued):**

2

3

        **FOLEY & LARDNER LLP**

4        **BY:  DEBRA A. LANG, ESQ.**
           **(Washington, D.C.)**

5

6

          **Counsel for Defendant**

7

8           **-  -  -**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2

 3              (REPORTER'S NOTE:  The following telephone

 4    conference was held in chambers, beginning at 1:32 p.m.)

 5

 6              THE COURT:  Good afternoon.  Everybody.  This is

 7    Judge Burke.

 8              Before we begin, let me just say a few things

 9    for the record.  We're here this afternoon for a discovery

10    dispute teleconference in the matter of Tessera, Inc. versus

11    BroadCom Corporation.  It's Civil Action No. 16-380-LPS-CJB

12    here in our court.

13              Because we're here on the record for our

14    teleconference, I have with me a court reporter from our

15    Court, Ms. Gunning, who will take down today's call, and I

16    just ask counsel if they would, identify themselves before

17    they speak to make sure we get a good and accurate record of

18    our call today.

19              Next, let me ask counsel for each side to

20    identify themselves for the record.  We'll begin first with

21    plaintiffs' side and we'll begin there with Delaware

22    counsel.

23              MR. FARNAN:  Good afternoon, Your Honor.  Brian

24    Farnan and J. J. Farnan on behalf of the plaintiff, and with

25    us is Michael Plimack, Dale Rice, and Thomas Garten from
```

1    Covington & Burling.

2             THE COURT:  All right.  Good afternoon to all of

3    you.

4             And now let's have counsel for the defendants

5    side identify themselves for the record.  Again, we'll begin

6    there with Delaware counsel.

7             MR. POFF:  Good afternoon, your Honor.  It's

8    Adam Poff from Young Conaway for Broadcom, and with me,

9    Matthew Holohan and north booth from Kilpatrick Townsend and

10   Debra Lang from Foley & Lardner.

11            THE COURT:  Okay.  And to you all, good

12   afternoon as well.

13            Counsel, I've read the letters that the parties

14   submitted with regard to the plaintiffs' motion.  I will

15   hear first from the movant, which in this case again is the

16   plaintiff, and let plaintiff address any additional issues

17   they wish to address and I will follow up with some

18   questions, and then I will also allow the defendant's side

19   to proceed in the same way as well.

20            So, first, who is going to speak on behalf of

21   the plaintiff?

22            MR. PLIMACK:  Your Honor, this is Michael

23   Plimack.  I will be the primary speaker for plaintiff.

24            THE COURT:  Okay.  Mr. Plimack, let me let you

25   address anything you wish to add to your letter in light of

1    the other side's responsive letter, and, again, I will

2    follow up with questions, if need be.

3              MR. PLIMACK:  Thank you, your Honor.

4              As your Honor knows, we're seeking worldwide

5    sales information for the accused products, and we're also

6    seeking technical documents for these accused products that

7    do not have ship-to locations in the United States, and

8    we've been seeking this discovery for basically this entire

9    calendar year.

10             So one thing I want to respond to right off the

11   bat from the letter that we received in response is that

12   somehow we should now continue to wait while Broadcom makes

13   a production that will go to the issue of how they sell

14   their products.  There seems to be an acknowledgment that

15   they will be producing some information.  They say they'll

16   be providing information to illuminate the very short sort

17   of conclusory declaration they submitted, but I want to

18   point out that we sent them a letter in April pointing out

19   all of these issues.

20             It's very similar to our letter brief saying, we

21   really need to have information that will shed light on how

22   Broadcom sells its products so we can determine for

23   ourselves whether these sales count as U.S. sales, and to

24   date, we have not had that production.

25             But I will say going beyond that, whether we've

1    had that production or not, the state of the record is now

2    that another Federal Judge in the Eastern District of Texas,

3    when faced with nearly identical issues that we have here

4    today, not only ordered Broadcom to produce the categories

5    of information that we're seeking here, but also found that

6    based on the produced information, there were material

7    disputes of fact as to whether Broadcom's claimed

8    international sales, its foreign sales, were, in fact, sales

9    that constitute infringement under the United States patent

10   law.

11              And this Godo Kaisha case which we discussed is

12   very significant because, as I said, it is essentially the

13   same issue that has been teed up by us.  And in that case,

14   first, the Court granted the motion to compel the same type

15   of information that we're seeking here in discovery, such as

16   worldwide sales information, such as sales agreements,

17   negotiation documents, and design wins, not limited to those

18   products shipped to an address in the United States.  And

19   then once the Court had that information, it looked at the

20   case law, the recently evolving case law, I might add, of

21   the Marvel decision in 2015 from the Federal Circuit, and

22   basically, the Marvel decision is significant because it

23   said that this issue of where the sales occur is not

24   dependent on a single factor, but really a totality of the

25   circumstances surrounding the sales, highlighting the need

1    to have discovery of those circumstances.

2            And then after looking at that case and

3    Broadcom's business practices, which are directly at issue

4    here as well, the Court concluded, and I quote, "It is hard

5    to distinguish the facts of this case from Marvel.  And so

6    in Judge Payne's decision, he lists all of the evidence that

7    creates this issue of fact that could establish that these

8    sales are actually -- count as U.S. sales, and I won't list

9    them here, but there's a whole list of them in the decision.

10           Now, in contrast to that, we have, as I said, a

11   short conclusory declaration stating sort of topic sentences

12   of what Broadcom says it does.  This list is in direct

13   contrast to what Judge Payne found in the Godo Kaisha case,

14   and as I said, even though Broadcom says we will now give

15   you discovery to show these facts in more detail, we should

16   not have to wait any longer while Broadcom selectively

17   produces evidence to support that.

18           As I said, we've been asking for this

19   information all year and specifically since April, and, you

20   know, at this point the other claim that they make in their

21   letter is that we should go ahead and take discovery of

22   third parties that instead of Broadcom producing information

23   that it has, we should go to, say, their top 20 customers

24   and seek discovery from them.  Well, I just also want to

25   make it clear in that regard, there no showing of burden by

1    Broadcom.

2              So the requested sales information we think is

3    as simple as running a report from a database they have.

4    They clearly have the technical information about these

5    accused products.  There's no declaration saying that this

6    would be unduly burdensome, and so given the lack of burden,

7    the clear relevance and another Federal Judge who has

8    ordered them to produce this information, we think that it

9    should be produced without further delay.

10             And I just want to say one last thing before I

11   stop for now, your Honor.

12             THE COURT:  Okay.

13             MR. PLIMACK:  They cite the Halo case from the

14   Federal Circuit in 2016 as I think perhaps their key

15   argument that we don't, that they don't have to provide this

16   discovery now.

17             Of course, Halo wasn't a discovery case, but

18   what Halo held was that if all of the actions are

19   international, the fact that pricing and contracting

20   negotiations in the United States alone do not constitute or

21   transform the extraterritorial activities into a sale within

22   the United States.  That is not the case here.  This is not

23   simply an issue of pricing and contracting negotiations.

24   Here, we have the so-called design win activity that was the

25   subject of the Marvel decision, also the subject of Judge

1    Payne's order in Godo Kaisha.

2              The design win, and I will just quote two

3    sentences from Godo Kaisha.  During this process, Broadcom

4    engineers worked with the requesters engineers to design a

5    chip that will meet the company's needs.  The process may

6    occur in the United States or abroad depending on the

7    parties' locations and needs.

8              So here, it's not simply pricing and contract

9    negotiations.  Broadcom is working in the USA side by side

10   with customers to design a Broadcom chip that goes into a

11   specific and similar product, for example, the iPhone made

12   by Apple, and qualify that chip for use in a product.

13             And here we know, for example, that Apple and

14   other customers use massive quantities of Broadcom chips

15   that are shipped abroad that are brought into the United

16   States in products.  And although they say they can't track

17   those sales, whatever that means specifically, it's beyond

18   dispute that, as I said, massive quantities of these chips

19   come into the United States.

20             Unlike some of the other cases that were cited

21   where there was no evidence that was submitted about chips

22   entering the United States, here, you need look no further

23   than their public statements, the 10-Ks, which list their

24   top United States customers containing products with chips,

25   Broadcom chips, that were shipped outside the country.

```
 1                  THE COURT:  Okay.  Mr. Plimack --

 2                  MR. PLIMACK:  Those are the points I want to

 3      raise your Honor.

 4                  THE COURT:  All right.  Let me follow up with a

 5      few questions.

 6                  First, you know, the first thing I always try to

 7      do is get my head around, you know, what is the universe of

 8      products that we're really talking about here when we talk

 9      about a request for documents of whatever type relating to

10      such products.  So I know we're talking about a certain

11      number of specifically accused products of the defendant,

12      and I know we're talking about a number of such products

13      that the defendant has asserted are shipped for sale to a

14      location outside the United States, but is there anything

15      else -- if I was trying to understand, okay, what we're

16      talking about are these 18 products, or these 37 products,

17      or what the span or scope of the request is on a product

18      basis.  Is there anything you could point me to for

19      guidance?

20                  MR. PLIMACK:  Yes.  So your Honor is right about

21      the category.  I think you framed it properly.  These are

22      products that we have specifically accused, so this is not

23      an issue of reasonably similar, for example.

24                  We've accused these products under the rules of

25      the case and we have been met with the claim that for these
```

1    specifically accused products, they are shipped outside the

2    United States.

3            We sent a June 28th letter, which we submitted

4    with our submission, I think it's -- I don't have the

5    exhibit now.  It's Exhibit 14, which has a spreadsheet that

6    details all the various chips and shows the ones that they

7    didn't produce.  I don't have a number.  Perhaps one of my

8    colleagues can give a ballpark.  I don't know the number of

9    chips that fall into this category, but they are set forth

10   in that letter with its detailed attachments of charts.

11           THE COURT:  Okay.  And to the extent that anyone

12   can help me further before the end of the call to identify,

13   look, Judge, if you want to look at Exhibit 14 and you want

14   to know the exact, you know, products that we're talking

15   about here, i.e. products that have been specifically

16   accused but which the defendant asserts are exclusively

17   products that have been shipped to an overseas location,

18   they are X.  That would be helpful.

19           Next, all right.  So assume we know what the

20   span of products are.  Then the next thing I always think of

21   is, okay.  Exactly what is the moving party here, the

22   plaintiff, asking me to order to be produced?  And I think

23   at times in your letter you used the phrases worldwide sales

24   information and core technical documents.  At times you

25   point to --

```
 1                    MR. PLIMACK:  Correct.

 2                    THE COURT:  -- what I think are Exhibits 1 and 2

 3     of your letter, which are some pretty long RFPs and

 4     interrogatories.  But if I'm to understand, you know, okay.

 5     We know what products we're talking about.  The plaintiff is

 6     asking for these particular types of records or documents to

 7     be produced.  What's the best way you would phrase it and

 8     explain it?

 9                    MR. PLIMACK:  Yes.  And, again, I think you got

10     that exactly right.  The two specific requests on which we

11     declare an impasse and we formally moved were worldwide

12     sales information for all accused products, and then also

13     the core technical documents as set forth to be produced in

14     the scheduling order, core technical documents for accused

15     products, even those products that have a ship to location

16     outside the United States.

17                    Now, I will say those are the two categories.

18     As I said, twice in their letter brief they say, we intend

19     to produce additional discovery, and we've been meeting and

20     conferring and trying very hard to not join issue on

21     anything that we didn't have to.

22                    So there is sort of this general promise that

23     they're going to provide discovery concerning sales

24     practices so the Tessera may determine which activities, if

25     ever, may render Broadcom's foreign sales relevant to this
```

1    action.  We have not gotten any of that information.  We

2    expect to get it by September 18th, which is the date for

3    substantial completion of discovery.  But I just want to be

4    clear on the record that we have not moved on this because

5    we have this assurance we're getting it but, of course, we

6    have not gotten it yet.

7              THE COURT:  Okay.

8              MS. RICE:  Your Honor, I apologize.

9              THE COURT:  Yes?

10             MS. RICE:  This is Dale Rice.  I could also

11   speak to the technical documents that we're looking for.

12   And we've tried to be very specific, and we're trying not to

13   get into an argument over whether something is a core

14   technical document versus something that's called for in our

15   discovery requests as opposed to going through their

16   production, identifying specific types of documents that

17   they've produced for some, but not all products, and that

18   was the purpose of the chart that was attached to the

19   June 28th letter to say, you know, we're missing GDX files

20   here, we're missing assembly qualification reports here.

21   And so it's a very sort of detailed, you know, line by line

22   of each product and what we're missing and those categories

23   of columns in that spreadsheet are what we consider to be

24   the significant documents at least for the interconnect

25   patent.

1           There has been a separate exchange of letters on

2   the surface of the patent, and then the issues are a little

3   more complicated for the packaging patent.  But we have

4   tried to be very specific about which documents are missing,

5   and we understand that some of them may not exist, but there

6   are a lot of gaps, and that's why we did that chart.

7           THE COURT:  So, Ms. Rice, is another way of what

8   you are saying is to say that when we say, Judge, we want

9   you to order that they produce core technical documents as

10  to these products, they know the type of core technical

11  documents we're talking about, and you can at least see with

12  regard to the interconnect patents what we have expressed to

13  be our view as to what those documents are.  For example, if

14  you look at Appendix A to Exhibit 14.  Is that what you are

15  saying?

16          MS. RICE:  That is what I'm saying.

17          THE COURT:  All right.  Thank you.

18          So I guess, Mr. Plimack, back to you.  You know,

19  the info you're seeking through this discovery dispute,

20  really, it's not info about the sales, U.S. sales or foreign

21  sales process.  It kind of assumes that the products are

22  otherwise discoverable, and it says, and so knowing that, we

23  want other information.  We want worldwide sales data.  We

24  want core technical documents.  Right?

25          I mean, you're not seeking in your request

1    access to the kind of discovery the defendant says you

2    should start with and then you should make the case as to

3    why these products are, in fact, relevant to this U.S.-based

4    case.  You're kind of assuming you've made that showing, and

5    now what you are asking for is, we want more stuff about

6    those products?

7            MR. PLIMACK:  I think that's exactly right, your

8    Honor.  And, again, as long as we've had this assurance that

9    it's coming, we didn't feel that it was appropriate to file

10   a motion, although, as I said, we've been asking for this

11   since at least April and have not received it.

12           But I do think that although everything you said

13   is exactly right, the plus factor, if you will, as I said,

14   is the Godo Kaisha case, which is a reason why I think this

15   Court today can order production of these documents because

16   another Federal Judge has essentially already done that

17   under the same circumstances, having looked, having --

18   having ordered the discovery produced and having looked at

19   it based on the submission of the parties, and then having

20   done a very thorough analysis of Broadcom's business

21   practices, listing what they are in its order and saying,

22   this creates a disputed fact for trial about where these

23   sales happened.

24           So I think at the point of having that decision

25   in hand, we certainly felt it was appropriate to bring this

1    motion at this time.

2              THE COURT:  Okay.  Right.  And that's where I

3    was going next, which is, you know, what the other side

4    would say is, look.  If the plaintiff asks for records or

5    documents about certain products and we come back and say,

6    we're going to refuse to produce them on the grounds we

7    don't believe they're relevant, then the defendant would

8    say, we think under the law that, you know, if we push back

9    on relevance grounds, the burden is at least on the

10   plaintiff to make a sufficient showing as to relevance

11   before the Court to be able to get documents relating to

12   those products.

13             And I think what you are saying is, I agree with

14   that, and to the extent we do have to make that kind of

15   threshold showing of relevance, i.e., that there is reason

16   to believe that these products that we're talking about here

17   that may be shipped overseas could well nevertheless be a

18   U.S. sale and thus irrelevant, we think that the information

19   we put forward to satisfy our burden as to relevance is, in

20   fact, the Godo Kaisha case.  Is that right?

21             MR. PLIMACK:  Yes.  I think that's right.  I

22   mean, I think there is some additional information we

23   provided such as, as I said, the 10-Ks that show these large

24   U.S. sales customers who are importing chips.

25             There's no question, as I said, that massive

1    numbers of these chips are coming into the United States.

2    So whether they can track a particular chip sale or not,

3    we'll see that when we take their deposition.   There's no

4    question that there's just massive numbers of chips.   So I

5    would add that to the Godo Kaisha case as two independent

6    reasons why this discovery is appropriate now.

7                 THE COURT:   All right.   And then with regard to

8    the Godo Kaisha case, if I was reading that case and the

9    underlying documents that came before Judge Payne's

10   opinions, and I was trying to satisfy myself, look, I can be

11   sufficiently confident that the statements that he is making

12   about Broadcom's U.S.-based sales activity, there in that

13   case are similarly likely applicable to the issues and the

14   products that we're facing here in this case, such that I

15   could rely in essence on your putting forward Judge Payne's

16   opinion to meet your relevance burden, how would you explain

17   to me or show me why, yes, Judge, we're talking about the

18   same kind of sales activity relating to the same kind of

19   products as were at issue in Godo Kaisha?

20                 MR. PLIMACK:   Yes.   And so my firm is not

21   counsel in that case, so we don't have access to, you know,

22   confidential information, but we, for example, have looked

23   at pleadings in the case that identify accused products, and

24   we note an overlap of accused Broadcom chips in that case

25   and this case.

1          We also note that the decision specifically

2   mentions Apple, which is one of Broadcom's most significant

3   customers.  And when you look at their public filings,

4   there's a very small number of customers that it says, these

5   are among our most significant and Apple is one of them.

6   The decision talks specifically about Apple, the

7   relationship between Apple and Broadcom, and talks about the

8   fact that -- I will just read from the decision.  It says,

9   U.S. sales teams provide support to defendant's U.S.

10  customers, and Broadcom categorizes its sales information

11  and activity for internal purposes based on the location of

12  customers.  For example, Broadcom currently has a dedicated

13  sales and engineering team for Apple based in the United

14  States.  And, again, the design process, design win process

15  where, you know, Apple and Broadcom work together for

16  Broadcom to demonstrate that this is a design that you want,

17  this can take weeks or months, and the activity is happening

18  in the United States.

19          So Apple is a specific customer that is

20  mentioned in that decision.  We don't have all the

21  confidential information, but it would be hard to imagine

22  that they would have a significantly different design win

23  process for the other customers that are going to be at

24  issue here like Samsung, like the set-top box companies such

25  as ARRIS, which is a huge percentage of the set-top boxes in

```
 1        the United States.

 2                    THE COURT:  Right.

 3                    MR. PLIMACK:  So perhaps this is a bit

 4        circumstantial, although I do think that the specific

 5        overlap of some of the chips in the two cases is direct

 6        evidence.  It just seems at this point for discovery

 7        purposes, we feel that we've met our burden.

 8                    THE COURT:  And if I wanted to, you know, again,

 9        if I wanted to be kind of extra sure that there's at least a

10        good solid grounding to go ahead and take some of the

11        reasoning that Judge Payne used in his case and apply it to

12        this case based on the nature of the products maybe at issue

13        in both or at least the general category of products, it

14        sounds like what you are saying is that you think you've

15        identified in some pleadings leading up to the decision in

16        Godo Kaisha additional information that might help make that

17        connection clearer.  Is that right?

18                    MR. PLIMACK:  Yes.  There is at least one

19        pleading that lists accused products, and there is overlap

20        between those and the ones in this -- there's some overlap.

21        I can't say it's complete overlap, but there are a number of

22        chips that are accused in both cases.  So that would be an

23        example of the overlap.

24                    And, again, I would just reiterate, against that

25        showing, there has been no showing of burden.
```

1              THE COURT:  Okay.

2              MR. PLIMACK:  So I don't believe it's difficult

3     for them to give the two categories of information that

4     we've identified.

5              THE COURT:  And then, lastly, to the extent that

6     the issue of whether or not customers to which the defendant

7     is shipping these chips overseas later incorporate them into

8     their own products that are headed for the United States,

9     and to the extent that that issue is relevant here and to

10    the extent that the issue of whether Broadcom knows that is

11    relevant, is that relevant because it is another factor that

12    indicates whether Broadcom's sale of the chip in the first

13    place is a U.S.-based sale, or is it more of a factor that's

14    relevant to the indirect infringement or induced

15    infringement issue as to whether or not we have induced

16    infringement going on here?

17             MR. PLIMACK:  Well, clearly, it's relevant to

18    indirect infringement.  As to whether it's also relevant to

19    sort of the direct infringement based on sufficient nexus to

20    the United States, I would say it's a factor.  It's one of

21    many factors.

22             THE COURT:  Right.

23             MR. PLIMACK:  But it has been put forward

24    primarily in connection with the indirect infringement

25    allegations, the fact that these chips are sold knowing

1    they're coming into the United States.

2              It is certainly -- put another way, it is not a

3    prerequisite to showing a, quote, U.S. sale to show that

4    they know that chips are coming to the United States.  If

5    there's sufficient contact with the United States in the act

6    of selling the chip along the lines that Judge Payne

7    indicated, that should be sufficient to find that that is a

8    U.S. sale.

9              THE COURT:  Okay.  And then, lastly, to the

10   extent on other side refers to the discovery that they're

11   intending to provide concerning, quote, "its sales practices

12   so that Tessera may determine which activities, if any,

13   would render Broadcom's foreign sales relevant to this

14   action," end quote, which is on page 3 of their letter, do

15   you know what discovery they're talking about?  Is it clear

16   what they are going to give you that relates to the issue of

17   where do sales take place?

18             MR. PLIMACK:  I don't believe so, and my

19   colleagues can correct me if I'm wrong, but I believe it is

20   somewhat of a mystery to us exactly what we're getting in

21   that regard.

22             THE COURT:  Okay.  All right.

23             MS. RICE:  Your Honor, this is Dale Rice.

24             THE COURT:  Sure.  Go ahead, Ms. Rice.

25             MS. RICE:  We have been told in general terms

1    that we are going to be getting the type of discovery that

2    was at issue in the orders in Godo Kaisha.  It was called

3    for by some discovery we specifically propounded on

4    June 20th for that purpose.

5            The open question that I think we still have is,

6    for which products and for which customers?  And that we

7    sort of don't have a straight answer on.

8            THE COURT:  Okay.  All right.  Let me turn to

9    the defendant's side.  And who is going to argue on behalf

10   of the defendant?

11           MR. HOLOHAN:  Your Honor, this is Matthew

12   Holohan from Kilpatrick Townsend.

13           THE COURT:  Okay, Mr. Holohan.  Let me give awe

14   chance to respond to what you heard from your colleagues on

15   the other side and I will kind of follow up with a few

16   questions as well.

17           MR. HOLOHAN:  Okay.  So just to clarify a few

18   points, there has been a lot of back and forth by a letter

19   and telephone call on these issues, and Broadcom is willing

20   to provide what we've been referring to as transactional

21   documents.  And these are things like purchase agreements,

22   massive sales agreements, documents that indicate, you know,

23   which sales employees are in which region, and things like

24   that.

25           You know, the design win documents, to the

1    extent that we have them, my understanding from looking at

2    that issue is that Broadcom doesn't necessarily have

3    documentation of its, quote unquote, "design wins," but

4    we've been referring to that kind of category of documents

5    as transactional documents separate from the actual

6    financial data, kind of line-by-line quantity and price for

7    every single product sold anywhere in the world.

8                   And for the transactional documents, the

9    production, the search for documents that we're doing and

10   the production that we're intending to make is not limited

11   to products with a ship-to U.S. location.  It's not limited

12   by customer.  It is based on the accused products in this

13   case, the hundred or so specific part numbers that are in

14   this case.  So that is the discovery that we are working on

15   gathering and producing.

16                   And I will say --

17                   THE COURT:  Mr. Holohan, let me just stop you

18   there to ask you a question or two.

19                   With regard to what you've called the

20   transactional documents you intend to produce, is the idea

21   there that these are documents that are going to provide the

22   kind of sales related information you reference in your

23   letter twice, and the reason why you're producing them is

24   because you think if the other side sees them, that they'll

25   understand that as to the particular specifically accused

```
 1    products that are at issue in this letter, the ones that are

 2    shipped initially overseas, they'll understand that they

 3    don't really have a right to get the kind of worldwide sales

 4    data or core technical documents that they say they want.

 5    Is that the gist?

 6              MR. HOLOHAN:  Well, your Honor, I'm not prepared

 7    to say that, you know, they will find that they don't have

 8    the right to those documents.  I think the point that we've

 9    been making in our letter is that they need to bridge the

10    gap.  They need to make a showing of relevance, so the

11    documents would enable them to make a showing of relevance

12    to the extent that it exists, to then show that they're

13    entitled to these documents.

14              THE COURT:  Okay.  They have to meet their

15    burden sufficiently to demonstrate relevance and you don't

16    think they have, and you think if they get these documents,

17    well, maybe they'll be able to or maybe they won't, but

18    they've got to do it.  Is that the idea?

19              MR. HOLOHAN:  That's correct.

20              THE COURT:  Okay.

21              MR. HOLOHAN:  That's correct, your Honor.

22              THE COURT:  Go ahead.

23              MR. HOLOHAN:  Just one clarification.  Sorry to

24    interrupt.

25              In researching this issue, and I think that
```

 1    we've made comments along these lines in the meet and confer

 2    exchanges.   In terms of Broadcom's sales practices, the

 3    factual information that would shed light on whether

 4    foreign sales are relevant, those aren't necessarily

 5    embodied in documents, so I think that Rule 30(b)(6)

 6    depositions would also be a good vehicle to get at these

 7    facts, and we're prepared to offer them in response to a

 8    properly drafted notice.

 9             THE COURT:   Okay.   And so is it fair to say then

10    what you're contemplating is, look, at most, you think what

11    would be reasonable is you produce certain transactional

12    documents that you've described by September 18th.   You

13    offer up and you mutually agree on a certain number of

14    Rule 30(b)(6) depositions that relate to this sales issue,

15    and then you say to the plaintiff, okay, plaintiff.   Having

16    taken that discovery, if you think you can make a showing of

17    relevance regarding U.S.-based sales as to particular

18    accused products that are at issue, do it, but you're going

19    to have to do it first and we don't think you can do it

20    until you go through that discovery.   Is that right?

21             MR. HOLOHAN:   Yes.   That's correct, your Honor.

22    And I think we're also, you know, we can also put together

23    an interrogatory response that would essentially resemble

24    the mystery declaration and also kind of expand that

25    historic Broadcom practice as well.

```
 1                 And the one thing I would say on the
 2    September 18th deadline, we're definitely trying to produce
 3    as much as we can by that deadline.  A lot of, particularly,
 4    a lot of the master purchase agreements, you know, there are
 5    agreements with Broadcom's customers have confidentiality
 6    clauses that we're working on, you know, working through on
 7    a protective order and notice provisions.  It's
 8    September 6th now.  We're hoping to get those letters out in
 9    the next couple of days, but, you know, fact discovery
10    closes at the end of March.  We still have over six months
11    left.  So I can't sit here and say that we'll be able to
12    produce everything on September 18th just because of the
13    those confidentiality issues.
14                 THE COURT:  Is the September 18th date the date
15    for substantial completion?
16                 MR. HOLOHAN:  Yes, your Honor.
17                 THE COURT:  Okay.  Got it.  And fact discovery
18    closes some time in March you said?
19                 MR. HOLOHAN:  March 30th, end of March.
20                 THE COURT:  Got it.  And at one point you
21    mentioned that there's approximately a hundred specifically
22    accused products in the case.  Is that right?
23                 MR. HOLOHAN:  The list that we've been working
24    with has a hundred products.  You know, on the order of a
25    hundred products.  I don't know what the exact number is.
```

```
 1              THE COURT:  I'm not holding you to a specific

 2    number.  I was just going to ask, of those roughly a hundred

 3    specifically accused products, here as to this discovery

 4    dispute, we're obviously talking about some subset of those

 5    products for which the defendant believes that the

 6    information is going to show the only place they're shipped

 7    for sale is overseas.  Do you have any sense as to that

 8    hundred-plus number of products what subset of products

 9    we're actually arguing about in this particular motion?

10              MR. HOLOHAN:  Unfortunately, I don't have that

11    number or that list in front of me.

12              THE COURT:  Okay.  Do you know whether it's

13    like, you know, more than half or a substantial number of

14    the whole or a very small number?  Any way to give a sense

15    of the scope of what we're arguing about here?

16              MR. HOLOHAN:  I'm going to ask Deb Lang.  Do you

17    have a sense of that?

18              THE COURT:  Okay.  Ms. Lang?

19              MR. HOLOHAN:  Deb, are you on?

20              MS. LANG:  Yes, I'm sorry.  I was having a hard

21    time getting the mute button off.  I believe that they

22    presented around 30.

23              THE COURT:  Okay.

24              MS. LANG:  But we can certainly confirm that and

25    get back to the Court this afternoon.
```

```
 1                    THE COURT:  Okay.  All right.  Thank you.
 2               All right.  So, Mr. Holohan, at least it's
 3     probably fair to say that the argument that's kind of
 4     leading for the other side and to which you spent a lot of
 5     time responding is, have they, in fact, made a sufficient
 6     showing of relevance as to this subcategory of accused
 7     products?  Have they, in fact, put forward enough
 8     information for me to conclude that, yes, there's enough
 9     here to believe that a case can be made that these products
10     are, in fact, U.S. sales or have been sold in the U.S. under
11     the meaning of that term in the law?  And it's probably
12     undisputed that the lion's share of what the plaintiff has
13     pointed to to say that they've met that burden, maybe not
14     all, but the lion's share, is Judge Payne's decision in Godo
15     Kaisha.  And so if we're looking at that decision, for
16     example, on Exhibit 19, where Judge Payne lists out some
17     number of bullet points that in that case were said to
18     relate to the discovery as to certain products and were said
19     to show U.S.-based connections to products that nevertheless
20     were shipped directly overseas, if we're looking at that
21     portion of his decision, and I was to ask you, what is your
22     assertion as to why it is that the plaintiff pointing to
23     that in those bullet points in this case isn't sufficient
24     here to meet their showing of relevance?  What is it about
25     that case or about the facts that Judge Payne is relying on
```

1    there that I can't necessarily rely on are, in fact, the

2    case here in our case?

3              MR. HOLOHAN:  Well, your Honor, Exhibit 19 is

4    Judge Payne's recommendation on the summary judgment motion.

5    If you look at the order on the motion to compel that Judge

6    Payne entered in that case, which --

7              THE COURT:  That's Exhibit 22.

8              MR. HOLOHAN:  Exhibit 22.  What he ordered

9    Broadcom to produce in that case was, if you look at page 2

10   in the bolded portion there, worldwide sales information

11   such as sales agreements, negotiation documents and design

12   wins, not limited to those products.  You know, the sales

13   agreements, negotiations, and design wins, those are the

14   transactional documents that we are prepared to produce.

15             THE COURT:  Got it.

16             MR. HOLOHAN:  And so it's a slightly different

17   inquiry in the summary judgment order where he goes and

18   says, well, there are all these facts and I cannot rule as a

19   matter of law that these foreign sales are noninfringing

20   because there is a factual dispute, so it's a different

21   issue.

22             THE COURT:  But if the plaintiff were to say,

23   look, sure, if we were in that case back in the Eastern

24   District Texas in April, yes, sure, maybe that kind of an

25   order would make sense.  But I think what they're saying is

1    we're not.  We have the history of that case that we can

2    rely on and we know what ended up happening was those kinds

3    of transactional documents were, in fact, produced and the

4    Court looked at them, and the plaintiff is suggesting they

5    relate to either the same or very similar products as are

6    the case here, and that we can then rely on Judge Payne's

7    conclusions about certain U.S.-based ties as to the sales

8    process for those products, and those conclusions at least

9    provide, the plaintiff would say, enough information for us

10   to actually satisfy a relevance burden.

11           Why isn't that line of thinking or that line of

12   argument correct?  Put differently, when we look at Exhibit

13   19 in those bullets, are you affirmatively suggesting that

14   the conclusions Judge Payne reached about the products at

15   issue in his case there are not, in fact, going to be the

16   conclusions that I would reach if I saw the same documents

17   as they relate to this case here?

18           MR. HOLOHAN:  Your Honor, I have to be honest.

19   I don't know what the specific overlap of products is

20   between this and the IP bridge case.  We are not -- KTS are

21   not Broadcom's counsel in that case.  I know that, you know,

22   there is this mention of Apple.  Apple is a customer at

23   issue here.  Mr. Plimack mentioned Samsung.  Samsung is a

24   different customer at issue here.  It wasn't at issue in IP

25   Bridge.

1           I can say at a very high level without

2      disclosing communications with my client that we've been

3      doing, that we've been conducting for the purposes of

4      generating this discovery that the Samsung process and the

5      Apple process are quite different, so I think this is a

6      product specific inquiry.  It's highly factual.  The

7      Carnegie Mellon case, the Halo case, the Marvel case, they

8      all line up.  These are highly fact specific, no bright line

9      rules.

10          So I think that the plaintiff has not

11     constructed a sufficiently compelling Venn diagram of IP

12     Bridge case and this case to short-circuit the showing of

13     relevance for worldwide sales data and technical data in

14     this case.

15          THE COURT:  And what is it that you think is

16     lacking from that Venn diagram?  In other words, you know,

17     what is it that the plaintiff hasn't done by way of its

18     letter that you think it would need to do to be able to

19     efficiently tie the conclusions reached as to the documents

20     that were at issue in that case with the state of affairs

21     that's likely to relate to our accused products in this

22     case?

23          MR. HOLOHAN:  They need to develop those facts

24     as they relate to the hundred products.  I'm sorry.  I

25     shouldn't say a hundred products.  I should say as they

1    relate to the accused products in this case, the customers

2    at issue and the specific facts and products of this case,

3    you know, based on the documents we're going to produce and

4    deposition testimony and whatever other proper discovery is

5    developed.

6              THE COURT:  And, again, in looking at the

7    particular bullet points at issue on page 4 of Judge Payne's

8    opinion, is the assertion that that is necessary because,

9    for example, when it comes to maybe particular categories of

10   accused products in this case that are perhaps sold to

11   particular customers, whatever master purchase agreements or

12   purchase orders or U.S. sales team information Judge Payne

13   was relying on in his case may not, in fact, be the same

14   kind of purchase agreements or purchase orders or U.S. sales

15   team data that applies to the accused products at issue

16   here?

17             MR. HOLOHAN:  I think that's right, and, again,

18   I'm not saying either way.  I'm not familiar with the facts

19   of the IP Bridge case and the product lines and the

20   customers that were at issue in that case.  It might be the

21   same and it might be different.  Plaintiff has not made that

22   connection or made that showing of relevance.

23             THE COURT:  All right.  Let me let you add

24   anything else you want to add, Mr. Holohan.  I know I cut

25   you off with some questions, before you wrap up.

```
 1              MR. HOLOHAN:  Not at all, your Honor.  Thank
 2     you.
 3              I just want to respond on the burden issue.  On
 4     the technical side, I think the parties are aware from their
 5     history in the International Trade Commission and even this
 6     case, searching for, obtaining and producing technical
 7     documents is highly burdensome.  We didn't put in a
 8     declaration, but the fact is that Broadcom, the entity in
 9     this case has undergone significant reorganization in recent
10     years, coming and going of personnel, recordkeeping, systems
11     coming on and offline.  You know, it's not an issue of
12     spoliation or being lost.  The documents are there to the
13     extent they exist and to the extent they ever existed.
14     But it is highly burdensome to go and tease out these
15     technical documents for products that may ultimately be
16     completely irrelevant in the case.  I just want to respond
17     on that.
18              THE COURT:  So you would acknowledge you have
19     not necessarily showing of burden in terms of making a
20     record, for example, by way of declaration, et cetera.
21     You're just telling me you think you could make it if you
22     had to?
23              MR. HOLOHAN:  That is right, your Honor, and I
24     think that -- yes.  The pleadings that Broadcom submitted in
25     connection with this hearing don't have that record in there
```

```
 1        either by a declaration or, you know, previous

 2        communications among the parties, among -- concerning

 3        document production, but the burden does exist.  And I will

 4        just say, you know, to the extent that there's an issue with

 5        the record, I mean, Tessera barely said anything about

 6        technical documents in their letter.  It was kind of

 7        throwing a line in at the end saying, yes, we're entitled to

 8        all of these sales documents and sales records and this and

 9        that, and, you know, for the same reason we're entitled to

10        technical documents.  And we took a similar approach in our

11        letter saying, they're not entitled to sales documents for

12        all of these reasons.  They're a fortiori not entitled to

13        technical documents for the same reasons and for the

14        additional reason it would be burdensome.  There was a

15        proportionality requirement.

16                  THE COURT:  Okay.

17                  MR. HOLOHAN:  So on.

18                  THE COURT:  Can I just ask, with regard to, less

19        let's say Ms. Lang is right and we're talking about

20        30 percent of the hundred or so 30 products at issue.  Is

21        there somewhere where you've affirmatively said, I'm just

22        affirmatively telling you, Judge, that as to those products,

23        they were not sold, they were not shipped directly to the

24        United States.  Put differently, is there a fact in the

25        record I can rely on to say, I know in terms of the status
```

1    of the record that when it comes to the products we're

2    talking about here, the defendant had demonstrated that

3    those products were not shipped to a U.S. location?  How do

4    I even know that?

5              MR. HOLOHAN:  It's proving a negative.  I think

6    what we've done is in running the reports that we have

7    produced through document production to show financial

8    records and other information for the products is we've

9    looked for documents that do have a ship-to record or a U.S.

10   ship-to location in the record and that's how we constructed

11   the search.

12             I'm not sure what the evidence --

13             THE COURT:  But somebody could probably say in a

14   declaration, look, this is the process that we went through

15   to confirm that as to these products which are at issue,

16   they are shipped not to the United States for sale, but

17   outside the United States.  That shows that that is the

18   case, and then look at the mystery declaration to tell you

19   why as to other sales-related activity relating to such

20   products there isn't U.S.-based connections.  Is that what

21   you would basically do?

22             MR. HOLOHAN:  Yes.  I see no reason why we

23   couldn't have somebody sign a declaration that says, for

24   this list of products, Broadcom's records show no

25   transactions in which the ship to location is the United

1    States.

2              THE COURT:  Okay.  And then lastly, is there

3    anything you want to add with regard to the portion of your

4    letter that talks about why, as to an indirect infringement

5    claim or claims, Tessera hasn't met its burden as to

6    relevance?  We've been talking largely about the issue of

7    direct infringement and U.S. sales.

8              MR. HOLOHAN:  Yes, your Honor.  And, in fact, it

9    goes to the mystery declaration and the lack of systemic

10   knowledge among Broadcom as to whether the products are

11   coming into the U.S.  I was counsel in the Halo case and

12   I've had another case that dealt with a very similar issue,

13   and the fact is that those cases are very clear that

14   knowledge that the product meets the limitations of the

15   claim is only Step 1.  There also needs to be knowledge that

16   it's made, used, sold, offered for sale or imported into the

17   U.S.

18             On the present record there is not, on a

19   product-by-product basis, knowledge on the part of Broadcom

20   that any Broadcom chips sold outside the U.S. ultimately,

21   any specific chip meets the limitations of any asserted

22   claim in this case.  Again, that is also the kind of

23   information that can be further developed in discovery by

24   depositions and a consideration of things like the mystery

25   declaration.

1         THE COURT:  And when you hear Mr. Plimack talk

2    about, you know, a customer like Apple and assertions in

3    your 10-K about Apple being a customer and what it does

4    ultimately with the chips that it purchases from you and in

5    terms of importing them into the U.S., how is what you just

6    said a rebuttal to that?  Is it that that is well and good,

7    but it does not have anything to do with the specific

8    products that are at issue in this case?

9         MR. HOLOHAN:  I think that's right.  I think

10   there's no showing as to specific products, that those

11   specific products are reaching U.S. soil.  They're first

12   sold outside the U.S.

13        THE COURT:  Okay.  All right.  Anything further

14   before I turn back to the other side?

15        MR. HOLOHAN:  I think I covered all of your

16   questions and all the points I wanted to raise, your Honor.

17        THE COURT:  All right.  Thank your Honor

18   Mr. Holohan.

19        Mr. Plimack, it's your motion, so I will give

20   you the last word.  Is there anything you want to add in

21   response to what your colleague said?

22        MR. PLIMACK:  Yes, just briefly.  So I will go

23   right to Godo Kaisha, because I think this colloquy has

24   highlighted that this is a significant, as I said, plus

25   factor for discovery now.  And I think it's interesting.

```
 1    Opposing counsel pointed us to the discovery order, and

 2    essentially I don't want to mischaracterize, but as I heard

 3    it, confirmed that Judge Payne ordered to be produced the

 4    same categories of documents that we're going to be getting

 5    based on counsel's representations, the transactional

 6    documents, the interrogatory response, 30(b)(6) deposition.

 7    And this further, I think, highlights the point that I'm

 8    making, which is we know right now, including based on that

 9    representation, that Judge Payne looked at the same corpus

10    of information that's going to be produced here to reach

11    those bullet points in his order about their business

12    practices.

13              And so I would say to the Court's question, how

14    are these bullet points not applicable here?  With due

15    respect to counsel, I think it's insufficient to say, I

16    don't know.  I mean, this is sort of akin to a burden

17    shifting, in my view.  We have an order of a Federal Judge

18    saying, I've looked at this discovery, I've done the work.

19    There are disputes of fact.  I think it's too lay in the day

20    for Broadcom to simply say, we can't tell you right now in

21    this discovery hearing whether there's a correlation between

22    that case and this case when we know, for example, Apple is

23    involved in both.

24              I also, I think -- I mean, if I'm understanding

25    correctly the suggestion that somehow we could get all of
```

1    this discovery and prove up on a customer-by-customer basis,

2    you know, sort of a mini-trial by customer to show that

3    there are U.S. sales I think is going to extraordinarily

4    burden the Court.  We know that Broadcom is refusing to

5    produce this information.  They have the information in

6    their own hands.

7            So I mean at this point, given the Godo Kaisha

8    case, I think it's very unfair to both us and the Court to

9    suggest that that is how we're going to proceed.  Given this

10   background, I think the best course is simply to order them

11   to produce the two categories of documents that we have

12   requested.  We will, of course, get the transactional

13   documents and so forth and look very closely at that.  But

14   given the state of the record, that's I think how we should

15   proceed.

16           THE COURT:  Okay.  Thank you, counsel.  I

17   appreciate your arguments.

18           I think what I'm going to ask the parties to do

19   and what I think I may need is to ask them to provide a

20   minimal amount of additional information and I will set this

21   out in a short oral order on the docket that will ask the

22   parties to produce this information in short order because I

23   don't think it's going to be a big list.  I know, for

24   example, I'm going to want to ask the plaintiff, if it can,

25   to make it even clearer for me why it believes that the

1    factual circumstances at issue in Godo Kaisha, including the

2    respective products at issue, demonstrate that we can kind

3    of rely on Judge Payne's finding there when it comes to the

4    products that are at issue or the issues that are at play in

5    our case.

6              I will probably also seek some additional

7    information maybe from both sides just to help me get

8    clarity on exactly which are the specifically accused

9    products at issue that are implicated by this motion.  And,

10   lastly, I may give the defendant the opportunity to provide

11   a declaration that, in fact, establishes with regard to

12   whatever number of products we're talking about that why it

13   is that they believe that there isn't any U.S.-based

14   shipping activity that relates to those products.  So I will

15   ask for that probably in no more than a few days from now.

16   I will put an oral order up as soon as today, but I will ask

17   this additional information be submitted in a few days, and

18   then I will be in a position to resolve the dispute shortly

19   thereafter.  And so the parties should look out for that

20   oral order and then follow up accordingly and we'll get the

21   dispute resolved.

22             With all of that said, is there anything further

23   that I need to take up at this time knowing I will take this

24   matter under advisement in the manner I described?  On the

25   plaintiffs' side, Mr. Plimack?

```
 1                    MR. PLIMACK:  I don't believe so, your Honor.
 2        Thank you.
 3                    THE COURT:  All right.  Thank you.  And on the
 4        defendant's side, Mr. Holohan?
 5                    MR. HOLOHAN:  No, your Honor.  Thank you for
 6        your time.
 7                    THE COURT:  All right, counsel.  Thanks for your
 8        arguments today.  I wish everybody a good day and a good
 9        week.  Thank you.
10                    MR. PLIMACK:  Thank you, your Honor.
11                    (Telephone conference concluded at 2:21 p.m.)
12                              -  -  -
13
14
15
16
17
18
19
20
21
22
23
24
25
```