

November 3, 2017

**VIA E-FILING**
The Honorable Christopher J. Burke
J. Caleb Boggs Federal Building
844 N. King Street                             **CONFIDENTIAL - FILED UNDER SEAL**
Unit 28, Room 2325
Wilmington, DE 19801-3555

      Re:  Tessera, Inc., et al. v. Broadcom Corp., C.A. No. 16-380-LPS-CJB

Dear Judge Burke:

      We write in response to Broadcom's sur-reply letter brief, filed yesterday, November 2—17 days after the Court heard argument.  D.I. 208.  As an initial matter, Broadcom's sur-reply is untimely and improper, and should therefore be stricken without consideration on this basis alone.

      As discussed at the October 16 hearing, Broadcom's letter only perpetuates Broadcom's continuing attempt to require Tessera to try its infringement case before Broadcom will produce discovery. *See* Hearing Tr. at 6:22-9:6.  All of Broadcom's arguments go to the merits of its non-infringement case (i.e., whether Tessera's infringement theory is convincing from a technical perspective).  But that is not the standard for discovery.  As this Court has observed, "the proper scope of discovery in a patent case" hinges on "whether or not the requested discovery is **relevant**."  *Invensas Corp. v. Renesas Electronics Corp.*, 287 F.R.D. 273, 278 (D. Del. 2012) (citing *Micro Motion, Inc. v. Kane Steel Co., Inc.*, 894 F.2d. 1318 (Fed. Cir. 1990)); *see also* F.R.C.P. 26(b)(1).  Discovery may be deemed relevant if used "'to flesh out a pattern of facts already known to [the] party [seeking discovery] relating to an issue necessarily in the case.'" *Invensas*, 287 F.R.D. at 278 (quoting *Micro Motion*, 894 F.2d at 1326).

      In the instant motion, Tessera has done just that—sought discovery on reasonably similar products based on pattern of key features identified in Tessera's infringement contentions.  None of the arguments offered by Broadcom undermine the fact that Tessera's infringement allegations (whether Broadcom agrees with them or not) are rooted in these identified features.  Tellingly, Broadcom does not contend that the charted products are not representative of Broadcom's other reasonably similar products, nor does Broadcom dispute that the representative product groupings are accurate.  Broadcom has done nothing to suggest that the reasonably similar products sought by Tessera are not "relat[ed] to an issue necessarily in the case" or not relevant.

      In addition, Broadcom's last-minute suggestion that Tessera's infringement contentions are contradicted by its proposed constructions, or are otherwise unconvincing, is wrong.

**<u>'001 Patent</u>:  The "diffusion layer" limitation**

      Tessera's supplemental infringement contentions thoroughly explain and cite to Broadcom's design documents to show how the representative products meet the "diffusion layer

formed between said first electrode portion and said second electrode portion" limitation. For example, Broadcom's ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ depict the claimed "first electrode portion" (which corresponds to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ underneath) prior to the formation of the claimed "diffusion layer":



*See, e.g.*, D.I. 194, Ex. 3 (Tessera's 8/22 '001 Supp. Inf. Contentions) at 8; *see also* D.I. 194, Ex. 8.

Tessera's proposed construction clarifies that the claimed "diffusion layer" is an "alloy layer, formed into the first electrode portion, located between the unchanged part of the first electrode portion and the second electrode portion." While Broadcom dismisses this as a "newfangled construction," this is precisely what the '001 Patent teaches:

> The external electrode portions 14a [the claimed "first electrode portion"] and the wiring electrodes of the substrate on which the semiconductor device is mounted are respectively connected to each other by the ball electrodes 16 [the claimed "second electrode portion"]. When the metal wirings 14 contain, e.g., Cu …, Sn contained in solder of the ball electrode 16 diffuses into Cu contained in the metal wiring 14, whereby **a Sn—Cu alloy layer** having low strength **grows in the thickness direction of the external electrode portion 14a**. However, since the thickness of the external electrode portion 14a of the metal wiring 14 is greater than that of the non-electrode portion of the metal wiring 14, this Sn—Cu alloy layer can be prevented from growing through the entire thickness of the external electrode portion 14a. … **Since a part of the external electrode portion 14 a is left unchanged into the Sn—Cu alloy layer**, the strength of the metal wiring 14 can be maintained even if Cu is used as a metal wiring material.

'001 Patent, Col. 8:59-9:15.

Consistent with the above teachings and Tessera's proposed construction, Tessera's supplemental infringement contentions explicitly state that "a solder ball, containing 99% tin, is deposited atop the ▮▮▮▮ during processing of the WLBGA package. A teardown of the finished BCM4356XKUBG product shows that **tin from the solder ball diffuses into the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, forming a diffusion layer**.":

> As will be described in further detail, a solder ball, containing 99% tin, is deposited atop ▮▮▮▮ during processing of the WLBGA package. A teardown of the finished BCM4356XKUBG product shows that tin from the solder ball diffuses into the ▮▮▮▮▮▮▮▮▮▮▮▮ forming a diffusion layer.

D.I. 194, Ex. 3 at 10.

The teardown image of the representative BCM4356XKUBG product shows an alloy layer that has formed into the first electrode portion and is located between an unchanged part of the first electrode portion (indicated in blue) and the second electrode portion (indicated in yellow):



D.I. 194, Ex. 3 at 16.

The unannotated version of the image—also cited in Tessera's Supplemental Infringement Contentions (*see* D.I. 194, Ex. 1 at 57 (citing TSRADCT_0003135-0003142 (Images of BCM4356XKUBG))—clearly shows the alloy layer covered by the red highlight:



      As Tessera discussed during the hearing (Tr. 15:7-16:6), the ubiquity of such an alloy layer in *all* Broadcom products having a solder ball/bump containing tin and a ▮▮▮▮▮▮▮ containing copper (in addition to the other identified key features) is evidenced in the reports for the remaining six accused products for which Tessera obtained teardowns (*See* D.I. 194, Ex. 1 at 57-58, 77-78):



4



Thus, contrary to Broadcom's contention, Tessera's proposed claim construction for the "diffusion layer" limitation supports, rather than contradicts, its supplemental infringement contentions.

**'563 Patent: The "array of contacts" limitation**

As an initial matter, Tessera has repeatedly explained that the "array of contacts" limitation for the '563 Patent should not limit the scope of discovery for reasonably similar products since the products accused of infringing the '563 Patent are a subset of the products accused of infringing the '001 Patent. While the Court has acknowledged this at the hearing (Tr. at 45:22-47:10), Broadcom's letter entirely ignores this truth.

In any event, Broadcom simply reformulates its prior arguments, already addressed at the hearing and in previous letters, (*see, e.g.*, D.I. 196 at 3), to argue that there is a "shortcoming" or "inconsistency" in Tessera's contentions and its proposed construction based on only one of the GDS images (below):



As Tessera explained at the hearing (Tr. at 22:23-23:18), Tessera used the above "zoomed in" GDS image in its supplemental contentions to show ▮▮▮▮▮▮▮▮▮▮ in detail; but, as shown below, Tessera *also* used GDS and optical images of the entire product to show the "grid-like pattern of contacts covering all or a substantial portion of the first surface, and not confined to either a peripheral region or a central region of the first surface."

**GDS images of "First Surface" of "Microelectronic Element" (contacts shown as dark green squares):**



6



**Optical Image of "First Surface" of "Microelectronic Element" (contacts shown as white dots):**



D.I. 194, Ex. 2 (Tessera's 8/22 '563 Supp. Inf. Contentions) at 6-8.

There is no "shortcoming" or "contradiction" between the arrangement of the contacts shown in the above images and identified in Tessera's supplemental infringement contentions and Tessera's proposed construction of "a plurality of contacts arranged in a grid-like pattern covering all or a substantial portion of the first surface, and not confined to either a peripheral region or a central region of the first surface." Once again, to the extent Broadcom disagrees,

7

Broadcom's dispute is with the merits of Tessera's infringement contentions and is not relevant to the current discovery dispute.

Broadcom does not provide any argument, much less a meritorious one, to refute that the additional, reasonably similar products sought by Tessera share the key features identified in the representative products charted in Tessera's supplemental contentions. The additional products are, thus, "relate[d] to an issue necessarily in the case," *Invensas*, 287 F.R.D. at 278 (quoting *Micro Motion*, 894 F.2d at 1326), and Broadcom should be ordered to identify all such reasonably similar products.

                                        Respectfully submitted,

                                        /s/ Brian E. Farnan

                                        Brian E. Farnan

cc:     Counsel of Record (via E-Mail)